FOUNDATION STEEL AND WIRE, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; FOUNDATION STEEL AND WIRE, INC. AND BURNS, MORRIS AND STEWART, INC., Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Foundation Steel & Wire, Inc. v. Commissioner
Docket Nos. 23794-81, 23933-81.
United States Tax Court
T.C. Memo 1986-429; 1986 Tax Ct. Memo LEXIS 177; 52 T.C.M. (CCH) 442; T.C.M. (RIA) 86429; September 11, 1986. Dougal C. Pope, for the petitioner. David W. Johnson and Sheri Wilcox, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner, in the statutory notices of deficiency, determined deficiencies in petitioner's Federal income tax for the taxable years ended April 30, 1977, and April 30, 1978 [1] in the following amounts and additions to tax under section 6653(b) [2] as follows: Docket
Taxable
Addition to Tax
Number
Year
Deficiency
Under Sec. 6653(b)
23794-81
1977
$411,393.43
$205,696.72
23933-81
1978
251,232.06
125,616.03
*178 The deficiencies determined in the statutory notice of deficiency for the taxable year 1978 covered adjustments to the liability of the parent corporation, Foundation Steel and Wire, Inc., and Burns, Morris and Stewart, Inc., which filed a consolidated return. Respondent was granted leave to file an amended answer in which he asserted increased deficiencies in tax and addition to tax under section 6653(b) for the taxable year 1978 in docket No. 23933-81. The amendment resulted in total deficiencies in tax and addition to tax under section 6653(b) of $422,422.08 and $211,211.04, respectively. After concession by petitioner of the deficiencies in income tax determined in the statutory notices of deficiency, the issues remaining for decision are whether Burns, Morris and Stewart, Inc., and Foundation Steel and Wire, Inc., were eligible to file a consolidated return for the taxable year 1978, and whether petitioner is liable for additions to tax under section 6653(b) for fraud. *179 FINDINGS OF FACT Some of the facts have been stipulated. The stipulations of facts and accompanying exhibits are so found and incorporated by reference. Foundation Steel and Wire, Inc. (Foundation Steel), and Burns, Morris and Stewart, Inc. (Burns), had their principal place of business in Houston, Texas, at the time the petitions in this case were filed. Petitioner's books and records were maintained and the income tax returns were prepared on the accrual method of accounting during the taxable years at issue. Petitioner used a fiscal year ending on April 30th. Foundation Steel filed a corporate income tax return for the taxable year 1977 and a consolidated corporate income tax return with Burns for the taxable year ended 1978. Foundation Steel was incorporated under the laws of Texas on January 8, 1971. It is in the business of manufacturing and selling steel and wire products. According to the corporate income tax returns filed for the taxable years 1977 and 1978, the stock in Foundation Steel was held as follows: Douglas Stewart
80 percent
Jack Burns
5 percent
Walter Morris
15 percent
Its officers during the taxable years at issue were: Douglas Stewart
President
Jack Burns
Vice-President,
Secretary- Treasurer
Walter Morris
Vice-President
*180 Burns was incorporated under the laws of Texas on March 14, 1977. Its business was the manufacture of pattern material for resale. During the taxable years at issue, the officers of Burns were: Douglas Stewart
President
Joe Hearndon
Vice-President
Jim Dailey
Vice-President
The articles of incorporation of Burns provide, in part, that Burns is authorized to issue 5,000 shares of stock. On April 2, 1977, Burns stock certificate number 1 was issued to Douglas L. Stewart for 750 shares. Stock certificates 2 through 15, inclusive, were issued to Douglas L. Stewart, Trustee, who held the shares in trust for various employees of Foundation Steel and Burns. These latter stock certificates were issued pursuant to the terms of trust agreements concurrently executed on April 2, 1977, by Douglas L. Stewart and the beneficiary/employees. Burns did not issue any other shares of stock nor were any shares of stock transferred during the period between April 2, 1977, and the end of the taxable year 1978. The trust agreements were identical except for the names of the beneficiaries who were all employees. The stock was to be held in escrow pending completion of a term *181 of employment of 5 years, at the end of which time the stock would be transferred from Douglas L. Stewart, trustee, to the named beneficiary/employee. The transfer would also occur if the beneficiary/employee died during the 5-year period. If an employee failed to satisfy the terms of employment, the trust terminated as to that employee and the ownership of the stock became owned individually by Douglas L. Stewart. Neither Foundation Steel nor Burns were parties to or beneficiaries under the trust agreement. Under the terms of the trust agreements, there was no circumstance by which Foundation Steel could acquire ownership of any of the shares of stock held in trust by Douglas L. Stewart. Douglas L. Stewart owned 100 percent of the stock of Burns during the period April 2, 1977, to the end of the taxable year 1978. Foundation Steel earned $296,884.73 in gross receipts from the sale of merchandise during the taxable year 1977 which was not deposited into either its general or payroll account nor was it reported on its Federal income tax return for that year. It earned $142,897.30 in gross receipts from the sale of merchandise during the taxable year 1978 which was not deposited *182 into either its general or payroll account nor was it reported on its Federal income tax return for that year. The unreported earnings consisted of bank checks that were either cashed at banks in the area or deposited into the general bank account and recorded on the general ledger as loans rather than income. Robert D. Pearce, C.P.A., prepared petitioner's income tax returns for the taxable years at issue. For the taxable year 1977, Pearce prepared the return from the bank statements, deposit slips, and cancelled checks of the general bank account and the payroll account. In addition, he used the general ledger. Douglas Stewart told him orally the figures to use for cost of goods sold, beginning and ending accounts receivable, and beginning and ending inventory. Pearce used the same information plus the workpapers and general journal of Burns to prepare the return for the taxable year 1978. The checks of Foundation Steel were signed either by Douglas Stewart or by Jack Burns. Cost of goods sold for the taxable years 1977 and 1978 to the extent of $496,234.84 and $229,228.18, respectively, were payments made to Star Associates. Ralph Block, who died on April 27, 1982, represented *183 that he was the sole owner of Star Associates. There was no listing for Star Associates in the Houston telephone directory for the years 1976, 1977, and 1978. Star Associates was not incorporated as a corporation in the State of Texas nor did it file an assumed name certificate with the State of Texas. Star Associates did not file taxd returns for the taxable years at issue. Ralph Block filed individual income tax returns for his taxable years 1977, 1978, and 1979 and amended income tax returns for his taxable years 1976, 1977, 1978, and 1979. The total of the checks from Foundation Steel deposited to the account of Star Associates for the calendar years 1976, 1977, and 1978 were identical to the totals reported as income by Ralph Block on attachments to his amended income tax returns for his taxable years 1976, 1977, and 1978, with the explanation that the amounts were handled by Ralph Block on behalf of an undisclosed principal. Star Associates performed no services and sold no goods to Foundation Steel during the taxable years at issue. The payments made to Star Associates by petitioner were used primarily to purchase assets for or to make loans to Douglas L. Stewart and *184 his friends, family, and associates. Personal loans were also made by Ralph Block in the total amount of $22,500.The payments by petitioner to Star Associates were intended to finance these personal needs of Douglas L. Stewart as well as to divert taxable income away from petitioner. Two unnumbered checks of Star Associates and three checks of Star Associates numbered 116, 117, and 118 aggregating $106,444.69 were used to purchase five cashier's checks made payable to M. L. Johnson in August of 1976. M. L. Johnson is the maiden name of Myra L. Stewart, Douglas Stewart's ex-wife. Four of the cashier's checks made payable to M. L. Johnson were deposited into the joint bank account of Mr. and Mrs. Douglas L. Stewart. The fifth cashier's check was deposited on September 11, 1976, into a bank account owned by Myra Stewart. Two checks of Star Associates, numbered 128 and 138, aggregating $73,625.08 were used to purchase yet two more cashier's checks made payable to M. Stewart, both of which were deposited in February or March 1978 into bank accounts belonging to Myra Stewart. Collectively, the seven casher's checks in the total amount of $180,069.77 that were made payable to M. L. *185 Johnson or M. Stewart were paid to Myra Stewart pursuant to her divorce settlement with Douglas Stewart. D. K. (Debra) Kuehn was an acquaintance of Douglas Stewart who was employed as a bartender before her nominal employment by Foundation Steel. She was in fact hired by Douglas Stewart to take care of rental property owned by him personally and to take care of other minor personal errands. Although Debra Kuehn performed no services for either petitioner, Foundation Steel paid her salary and also paid her personal expenses, including the purchase of an automobile and payment of tuition for her son. An unnumbered check of Star Associates in the amount of $10,000 was used to purchase a cashier's check made payable to D. K. Kuehn, which check was cashed on June 3, 1976. The check of Star Associates numbered 122 in the amount of $18,500 was used to purchase a cashier's check made payable to Stewart Title Guaranty Company, which is an entity unrelated to Douglas Stewart. Douglas Stewart lent the $18,500 represented by this cashier's check to Debra Kuehn to use as a down payment on a house at 12214 Timberlake in Houston. Debra Kuehn purchased the property and then conveyed it to *186 Douglas Stewart. On June 2, 1978, the following properties, all of which were located in Houston, were conveyed by Douglas Stewart to his son, also named Douglas L. Stewart, [3] and to his daughter, Susan Stewart Crouse, in undivided one-half interests: 1009, 1009-1/2, and 1011 Enid Street; 1809 Harvard Street; 1228, 1228-1/2, 1230, 1230-1/2 and 1232-1/2 Nicholson Street. Each of the properties had been purchased by Douglas Stewart subject to mortgages that were paid by funneling money from Foundation Steel through Star Associates to the various title companies or individuals. The down payment on the property located at 1009, 1009-1/2, and 1011 Enid Street in Houston originated with funds paid to Star Associates by Foundation Steel. Star Associates issued check number 121 dated September 14, 1976, in the amount of $36,784.56 payable to D. K. Kuehn. Debra Kuehn did not earn these funds. The check was actually used to purchase a cashier's *187 check payable to Stewart Title Company that was used as a down payment on property located at 1009, 1009-1/2, and 1011 Enid Street in Houston. The check of Star Associates numbered 157 dated April 24, 1978, in the amount of $45,425 payable to E. W. and J. E. Wright was used to purchase a cashier's check payable to the same two individuals. This check was used to pay off the existing mortgage on the property located at 1009, 1009-1/2, and 1011 Enid Street. On June 2, 1978, Douglas Stewart conveyed an individed one-half interest to his son, Douglas L. Stewart, and the remaining undivided one-half interest to his daughter, Susan Stewart Crouse. The mortgage on the property at 1809 Harvard Street in Houston was paid in much the same fashion. The check of Star Associates numbered 155, dated April 24, 1978, in the amount of $20,875 and payable to Tom Bednar was used to purchase a cashier's check in the same amount also payable to Tom Bednar. The latter check was used to pay off a lien held by Tom Bednar on property owned by Douglas Stewart at 1809 Harvard Street in Houston. The property was conveyed on September 14, 1976, to Douglas Stewart and on June 2, 1978, Douglas Stewart conveyed *188 the property to his daughter, Susan Stewart Crouse, and to his son, Douglas L. Stewart. The third set of properties conveyed by Douglas Stewart in undivided halves to his children on June 2, 1978, was located at 1228, 1228-1/2, 1230, 1230-1/2, and 1232-1/2 Nicholson Street in Houston. The check of Star Associates numbered 156, dated April 24, 1978, in the amount of $23,950 and payable to Nicholson Equities was used to buy a cashier's check which in turn was used to buy two new cashier's checks. One of the cashier's checks, in the amount of $5,579.87, was used to pay off the first lien on property purchased by Douglas Stewart on September 2, 1976, at 1228, 1228-1/2, 1230, 1230-1/2, and 1232-1/2 Nicholson Street in Houston. This property was conveyed to Douglas Stewart's children on June 2, 1978. The remaining cashier's check was used to purchase yet another cashier's check in the amount of $18,370.13. A portion of the funds paid to Star Associates by Foundation Steel was used to establish personal savings accounts or certificates of deposit for Douglas Stewart, President of Foundation Steel. The check of Star Associates numbered 120, dated September 14, 1976, in the amount *189 of $25,500 was used to purchase a cashier's check payable to D. Stewart. This check was then used to purchase a second cashier's check that was used to open a savings account styled Douglas L. Stewart or D. L. Stewart. The same procedure was followed with an initial check of Star Associates dated November 30, 1976, in the amount of $22,500. The second cashier's check, together with $2,500 in cash, was used to purchase a certificate of deposit dated May 25, 1977, in the name of Douglas L. or D. L. Stewart. Three checks of Star Associates aggregating $58,313.03 were made payable to D. Stewart. The check of Star Associates numbered 145, dated May 25, 1977, in the amount of $12,572.08 payable to Douglas L. Stewart, was deposited into a savings account in the name of Douglas L. or D. L. Stewart. Other purposes were also served by the Foundation Steel funds paid to Star Associates. The checking account of Star Associates was reduced $30,000 on March 3, 1977, for the purchase of a cashier's check payable to L. C. Hartman. This represented a loan from Douglas Stewart to L. C. Hartman. The check of Star Associates numbered 154, dated April 24, 1978, in the amount of $5,562 and payable *190 to D. A. Bowyer represents a payment for child support to the ex-wife of J. D. Hansen, an employee of Foundation Steel. Four unnumbered checks of Star Associates aggregating $88,599 were used to purchase cashier's checks payable to H. C. or H. R. Chamblee. The four cashier's checks were, in turn, used, along with $1,501 in cash, by Douglas Stewart to purchase a cashier's check dated July 12, 1976, in the amount of $90,000 payable to Guardian Title Company. This check was used by Douglas Stewart to purchase real estate located at 1220 Telephone Road in Houston. The property was then conveyed by Douglas Stewart to South Texas Warehouses, Inc. Prior to 1977, South Texas Warehouses, Inc., an unrelated corporation, owned the property at which the offices of Foundation Steel are now located. Foundation Steel paid $950 per month to South Texas Warehouses, Inc., as rent on the property prior to 1977. In January 1977, South Texas Warehouses, Inc., conveyed the property to Douglas Stewart. The general journals for Foundation Steel reflect an increase in rent from $950 per month to $3,000 per month beginning January 31, 1977. The rent checks of $3,000 per month continued to be made *191 payable to South Texas Warehouses despite the change in ownership of the property. The rent checks were deposited in bank accounts styled South Texas Warehouses, with signature authority in Douglas Stewart, Walter Morris, and Jack Burns. The rental income was not reported by Douglas Stewart on his individual tax return for the taxable years 1977 and 1978. The property was deeded in undivided one-half interests by Douglas Stewart to his son, Douglas L. Stewart, and his daughter, Susan Stewart Crouse, on June 2, 1978. The checks of Star Associates numbered 143 and 144 dated April 29, 1977, and May 25, 1977, respectively, payable to Metallic Building Co. aggregating $75,604.92 were used to pay for the construction of a building on 350 West 26th Street in Houston, where Foundation Steel is located. A payment by Foundation Steel dated August 23, 1976, in the amount of $1,750, which was deducted on its income tax return as an insurance expense, included $1,500 for payment of the premium on a fire insurance policy covering property at 1220 Telephone Road in Houston owned by Douglas Stewart. Similarly, in the taxable year 1978, payments aggregating $843 deducted by Foundation Steel *192 on its income tax return as insurance expense represented insurance premiums on property owned by Douglas Stewart. Payments during the taxable year 1978 totaling $9,478.76, deducted by Foundation Steel as utility expenses, represented payments of utility bills on various properties owned by Douglas Stewart. On July 29, 1981, the Commissioner issued statutory notices of deficiency to petitioner for the taxable years 1977 and 1978. As relevant to the issues that have not been conceded, the Commissioner determined that Foundation Steel, through the acts of its officers and shareholders, evaded income taxes by omitting substantial amounts of gross receipts, claiming false costs of goods sold, and inflating other deductions. Specifically, Foundation Steel was determined to have overstated its cost of goods sold for the taxable year 1977 and 1978 in the respective amounts of $496,234.84 and $229,228.18. The Commissioner also disallowed a portion of the expenses deducted by Foundation Steel during each of the two taxable years on the grounds that they were, in part, nondeductible personal expenditures and, in part, capital expenditures. Respondent was granted leave to file an amended *193 answer for the taxable year 1978 based upon disallowance of the privilege of petitioner to file a consolidated income tax return with Burns. The amendment resulted in total deficiencies in tax and addition to tax under section 6653(b) of $422,422.08 and $211,211.04, respectively. OPINION The Commissioner's determination in his statutory notices of deficiency is presumptively correct as to the underlying deficiency in income tax and petitioner has the burden of disproving each adjustment. ; Rule 142(a). The burden of proof as to the civil fraud addition and on the issue raised by respondent's amended answer is on respondent. The issues for decision are whether Burns and Foundation Steel were entitled to file a consolidated income tax return for the taxable year 1978 and whether petitioner is liable for the addition to tax under section 6653(b) for fraud. An affiliated group of corporations is authorized to file a consolidated income tax return upon the consent of all members of the affiliated group. Sec. 1501. An affiliated group includes a group in which the parent corporation owns 80 percent of the total voting power *194 of the stock of the subsidiary. Petitioner contends that Foundation Steel owns 80 percent of the voting stock of Burns, and that the two entities were, therefore, entitled to file a consolidated return for the taxable year 1978. None of the stock certificates issued by Burns were issued to Foundation Steel. Fifteen percent of the shares were issued to Douglas L. Stewart. The remainder of the stock was issued in the name of Douglas L. Stewart, Trustee. The trust agreements each list a beneficiary who was an employee of either Foundation Steel or Burns. In no instance is Foundation Steel either a primary or secondary beneficiary of the trust agreement. Petitioner asks the Court to ignore the express provisions of the trust agreements and to find that Douglas Stewart was acting as a representative of Foundation Steel. This interpretation is not supported by any provision in the trust agreements. Further, in the event of the failure of the trust by virtue of the termination of the employment of the named beneficiary, the stock was transferable to Douglas L. Stewart and not to either Foundation Steel or to Douglas L. Stewart as President of Foundation Steel. We find that Douglas *195 L. Stewart, individually, and as trustee, was owner of 100 percent of the stock of Burns. Eighty percent of Foundation Steel was also owned by Douglas L. Stewart. Common ownership of brother-sister corporations does not, however, qualify Foundation Steel and Burns to file consolidated income tax returns. , affd. . Respondent is sustained upon this issue. Sec. 1504. The remaining issue for decision is whether petitioner is liable for the additions to tax under section 6653(b) for fraud. As noted the burden of proving fraud is on respondent, and he must do so by clear and convincing evidence. Sec. 7454(a); Rule 142(b); ; . This burden is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes, and that there is an underpayment of tax. , *196 cert. denied ; ; . When fraud is asserted, as in the instant case, for more than one taxable year, respondent must show that some part of the underpayment was due to fraud for each taxable year for the corresponding addition to tax to be upheld. ; ; . The existence of fraud is a question of fact to be resolved upon consideration of the entire record. ; , affd. without published opinion . Fraud will never be presumed. . Fraud may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. , *197 affd. ; . The taxpayer's entire course of conduct may establish the requisite fraudulent intent. ; . The proof may also rest upon reasonable inferences properly drawn from the evidence on record. . Any conduct, the likely effect of which would be to mislead or conceal, is indicative of fraud. . The failure to keep adequate books and records indicates an attempt to defraud. ; . The consistent understatement of substantial amounts of income over several years is strong evidence of fraud. ; , affg. . It is well settled that a fraudulent *198 understatement of income can also be accomplished by means of an overstatement of deductions. , affd. ; , affd. . Respondent has affirmatively shown numerous indicia of fraud. Numerous checks were cashed rather than deposited to the Foundation Steel bank accounts in both of the taxable years at issue. Taxable income was also diverted from petitioner by an overstatement of expenses caused by fraudulent payments to Star Associates in both of the taxable years at issue. The expenses shown on the returns of petitioner for the taxable years 1977 and 1978 also included excessive rentals nominally paid to a third party but, in fact, paid to shareholders of Foundation Steel. The President of Foundation Steel, Douglas Stewart, used these sums to support a female friend and her child, to buy property for his children, to pay his obligations to his ex-wife, and to pay for items of personal benefit to him. A variety of bank accounts and the purchase of multiple layers of *199 cashier's checks were used to accomplish these purposes, primarily by the diversion of funds through Star Associates, a fictitious entity. Foundation Steel itself also made direct payments for Douglas Stewart's benefit in the form of utility and insurance payments and in the form payments to Debra Kuehn despite the fact that she did no work whatsoever for Foundation steel. These acts by petitioner were purposeful and were committed with intent to evade tax by the understatement of income, and overstatement of expenses. Further, petitioner's accountant was not informed of the existence of the additional accounts nor of the illusory quality of many of the payment reflected on the books of Foundation Steel. We are the trier of fact. It is our duty to listen to the testimony, observe the demeanor of the witnesses, weigh the evidence, and determine what we will or will not believe. We are not required to accept testimony at face value, and we may discount a witness' self-interested testimony and place our reliance on other testimony which we believe is more reliable. ; . *200 In this case, Douglas Stewart in many cases admitted the fraudulent conduct shown by the record.He was simply not credible in the few instances in which he claimed to have a lack of control over Star Associates or a lack of knowledge as to the purposes of various payments. In essence, petitioner's own witness confirmed the abundant and unrefuted evidence of fraudulent actions taken by Foundation Steel. Under these circumstances, we have no difficulty whatsoever sustaining the determination of the Commissioner as to the additions to tax for fraud. As both parties have made concessions, Decisions will be entered under Rule 155.
Footnotes
1. For convenience, we will refer to each of petitioner's taxable years by the calendar year within which it ended, i.e., the taxable year ended April 30, 1977, will be referred to hereafter as the taxable year 1977. ↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the relevant years, and all Rule references are to the Rules of Practice and Procedure of this Court.↩
3. Father and son both have the name Douglas L. Stewart. All references to Douglas Stewart, Douglas L. Stewart, D. Stewart, and D. L. Stewart refer to the father, President of Foundation Steel, unless preceded by the phrase "his son."↩